Sardino v Scholet Family Irrevocable Trust (2025 NY Slip Op 02828)

Sardino v Scholet Family Irrevocable Trust

2025 NY Slip Op 02828

Decided on May 8, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 8, 2025

CV-23-1697
[*1]Kathleen Sardino et al., Respondents,
v
Scholet Family Irrevocable Trust et al., Appellants, and Peter Williamson, Respondent.

Calendar Date:February 10, 2025

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Powers, JJ.

The Law Office of Laura E. Ayers, Esq., Delanson (Laura E. Ayers of counsel), for appellants.
Young/Sommer LLC, Albany (Allyson M. Phillips of counsel), for respondents.

Powers, J.
Appeal from an order of the Supreme Court (Rebecca Slezak, J.), entered August 14, 2023 in Hamilton County, which, among other things, partially granted plaintiffs' motion for summary judgment.
Having previously affirmed Supreme Court's order granting plaintiffs' motion for a preliminary injunction, we are familiar with the underlying facts presented here (192 AD3d 1433 [3d Dept 2021]). The parties own neighboring camps on the southeast end of Big Moose Lake in the Town of Long Lake, Hamilton County. The camps in question were built in the 1950s by Daniel and Alice Rasbach, Frank and Beatrice Siegenthaler and, finally, John and Shirley Sammons. Each property has since passed to the parties herein, who are either the children or grandchildren of these original owners. Richard and Jean Scholet were conveyed the Rasbach property in 1965 — Jean Scholet being the Rasbachs' daughter — and they subsequently conveyed interests in that property to their children: defendants Arthur Scholet, Thomas Scholet and Cosanne Schneberger. Plaintiff Joanne Williamson is the daughter of the Siegenthalers and plaintiff Kathleen Sardino is the daughter of the Sammonses. Thus, the relevant properties are, from west to east: the Scholet (Rasbach) property, the Williamson (Siegenthaler) property and the Sardino (Sammons) property.[FN1]
At the time the original camps were built, each property was accessible only by boat. To remedy this hindrance, in 1968, Richard and Jean Scholet, the Siegenthalers and the Sammonses each secured separate express easements over the neighboring property to the west of the Scholets belonging to William Judson for the purpose of constructing a roadway — now known as Judson Road — to allow vehicular access and electricity to their camps. Judson Road terminated at the start of the Scholet (Rasbach) property and, consequently, the Scholets, Siegenthalers and Sammonses came together and constructed an extension to Judson Road. The extension traversed each property in turn and provided them each with vehicular access to their individual properties. The record does not demonstrate that the plaintiffs or their predecessors sought or received express permission to utilize the extension. Nevertheless, it has been consistently utilized to access the properties in question and maintenance obligations have been shared between the parties. Moreover, other property owners have been excluded from using the extension without permission from each of the three families.
In 2018, after receiving a permit from the Adirondack Park Agency, certain defendants relocated the portion of the extension that crossed the Scholet (Rasbach) property and purportedly denied plaintiffs access thereto. This led to a breakdown in the parties' relationships and gave rise to this action pursuant to RPAPL article 15. In bringing this action, plaintiffs sought a determination as to their right to use the extension under various theories — including, pertinent here, easement by prescription [*2]and easement by estoppel — and to prevent defendants from interfering with their continued use thereof. In response, defendants counterclaimed seeking, among other things, to quiet title and a declaration that plaintiffs have no easement. Following amendment of the complaint, plaintiffs moved for partial summary judgment on their claims for a prescriptive easement and, relevant here, to dismiss the forementioned counterclaims. Defendants cross-moved for, among other things, partial summary judgment dismissing the amended complaint and for judgment in their favor on these same counterclaims.
Addressing both motions, Supreme Court granted judgment in plaintiffs favor on their first and second causes of action seeking a prescriptive easement over the extension and directed same to be recorded with the County Clerk.[FN2] Based upon this, the court enjoined defendants from interfering with plaintiffs' use of the extension, found plaintiffs' claim for an easement by estoppel moot and, furthermore, denied defendants' counterclaims to quiet title and for a declaration that plaintiffs have no easement. Defendants appeal.
Initially, we agree with defendants' contention that Supreme Court erred in finding a prescriptive easement under the facts presented. Although not in writing, it is uncontroverted that an agreement existed between the parties' predecessors for the shared construction, maintenance and use of the extension. Inherent in this agreement is that defendants' predecessors granted plaintiffs' predecessors permission to utilize that portion of the extension that crossed their property to access their respective properties, thereby negating the required element of hostility (see Mispalleleh Beis Medresh Torah Vadaas v Yeshivath Kehilath Yakov, Inc., 89 AD3d 700, 701 [2d Dept 2011]; Abbott v Herring, 97 AD2d 870, 871 [3d Dept 1983], affd 62 NY2d 1028 [1984]).
"A party claiming a prescriptive easement must show, by clear and convincing evidence, that the use of the easement was open, notorious, hostile and continuous for a period of 10 years. Once the other elements are established, hostility is generally presumed, thus shifting the burden to the defendant to demonstrate that the use was permissive" (Bekkering v Christiana, 231 AD3d 1444, 1445 [3d Dept 2024] [internal quotation marks and citations omitted]). However, "[p]roof of permissive use will negate the element of hostility and defeat creation of a prescriptive easement" (Mispalleleh Beis Medresh Torah Vadaas v Yeshivath Kehilath Yakov, Inc., 89 AD3d at 701). "[W]here[, as here,] permission can be implied from the beginning, no adverse use may arise until there is an assertion of a hostile right which is made known to the property owner" (Van Deusen v McManus, 202 AD2d 731, 733 [3d Dept 1994]; see Bolognese v Bantis, 215 AD3d 616, 620 [2d Dept 2023]; Schwengber v Hultenius, 160 AD3d 1083, 1084 [3d Dept 2018]).
The record demonstrates that there was an agreement between the parties' predecessors [*3]for the shared construction, use and maintenance of the extension. Most notably, the record contains contemporary letters written by Jean Scholet to a neighboring property owner in which she describes the extension as a "triple-venture" between the families, the result of an "agreement" and an "arrangement" of "mutual benefit." While the record does not demonstrate that plaintiffs or their predecessors sought or received express permission to utilize the extension, this was because they believed it unnecessary as they had constructed the extension and, therefore, had the right to use it. It is manifest that, as a product of this agreement, defendants' predecessors had granted permission to plaintiffs' predecessors to cross their property. Thus, because plaintiffs' predecessors' use of the extension was permissive, the element of hostility was negated (see MJK Bldg. Corp. v Fayland Realty, Inc., 181 AD3d 860, 862 [2d Dept 2020], lv dismissed 37 NY3d 929 [2021], lv denied 38 NY3d 1120 [2022]; Abbott v Herring, 97 AD2d at 871; compare Dermody v Tilton, 85 AD3d 1682, 1683 [4th Dept 2011]; cf. McKeag v Finley, 93 AD3d 925, 928 [3d Dept 2012]; Dekdebrun v Kane, 82 AD3d 1644, 1646 [4th Dept 2011]; Chaner v Calarco, 77 AD3d 1217, 1218 [3d Dept 2010], lv denied 16 NY3d 707 [2011]). Therefore, no adverse use could have arisen until there was the assertion of a hostile right (see Kuzmicki v Bentley Yacht Club, 193 AD3d 710, 712 [2d Dept 2021]; cf. Bratone v Conforti-Brown, 150 AD3d 1068, 1071-1072 [2d Dept 2017], lv denied 31 NY3d 902 [2018]), which, at the earliest, occurred in 2018. We are presented with a permissive use that did not ripen into a prescriptive one for the time required (see generally Hinkley v State, 234 NY 309, 316-317 [1922]; Mentiply v Foster, 201 AD3d 1051, 1058 [3d Dept 2022]; 2 NY Jur 2d, Adverse Possession § 40). As such, we reverse Supreme Court's determination granting plaintiffs' motion for summary judgment in their favor on their claims for an easement by prescription and, correspondingly, grant defendants' cross-motion dismissing these claims.
Yet, these same facts establish plaintiffs' entitlement to an easement by estoppel (see generally MJK Bldg. Corp. v Fayland Realty, Inc., 181 AD3d at 862).[FN3] "An easement by estoppel may arise when, among other things, a party reasonably relies upon a servient landowner's representation that an easement exists" (Sardino v Scholet Family Trust, 192 AD3d at 1434 [internal quotation marks and citations omitted]). The uncontested existence of the agreement between the parties' predecessors for the construction and use of the extension, together with the time and expense of not only the initial construction but, also, the continued 50-year maintenance thereof, demonstrates that plaintiffs "undertook . . . action[s] to their detriment in reasonable reliance upon a representation that they held an easement" (MJK Bldg. Corp. v Fayland Realty, Inc., 181 AD3d at 863; compare U.S. Cablevision Corp. v [*4]Theodoreu, 192 AD2d 835, 838-839 [3d Dept 1993]; Matter of Danial v Town of Delhi, 185 AD2d 500, 503 [3d Dept 1992], lv denied 81 NY2d 706 [1993]; Van Schaack v Torsoe, 161 AD2d 701, 703 [2d Dept 1990]). Consequently, we find that defendants' cross-motion for summary judgment seeking to dismiss plaintiffs' claims for an easement by estoppel was properly denied. However, despite this determination as to the merits of plaintiffs' claims, Supreme Court found that questions of fact persisted because plaintiffs had not demonstrated that they would suffer "unconscionable injury" so as to create an exception to the statute of frauds. In doing so, the court applied the incorrect standard, as the statute of frauds does not bar the creation of an easement by estoppel (see generally General Obligations Law § 5-703; 61 NY Jur Statute of Frauds § 125). Considering the foregoing misinterpretation of the law, we find the court to have incorrectly determined there to be questions of fact on plaintiffs' claims for an easement by estoppel and, thus, deem it appropriate to search the record and grant plaintiffs summary judgment in their favor on these claims (see generally Amici v Mazza, 234 AD3d 1170, 1173 [3d Dept 2025]; Oppenheimer v State of New York, 152 AD3d 1006, 1009 n 2 [3d Dept 2017]; Bloom v Van Lenten, 106 AD3d 1319, 1321 n [3d Dept 2013]).
Aarons, J.P., Pritzker, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as (1) granted that part of plaintiffs' motion for summary judgment in their favor on their first and second causes of action, (2) denied defendants' cross-motion for summary judgment dismissing said causes of action and (3) denied plaintiffs summary judgment in their favor on their third and fourth causes of action; motion denied as to the first and second causes of action, cross-motion granted as to those causes of action and summary judgment awarded to plaintiffs on the third and fourth causes of action; and, as so modified, affirmed.

Footnotes

Footnote 1: For purposes of clarity, references to each property will utilize both the current owner as well as the relevant predecessor in title. Thus, references will be according to the following: the Scholet (Rasbach) property, the Williamson (Siegenthaler) property and the Sardino (Sammons) property. The Scholet (Rasbach) property was subdivided in 2015 creating two lots. However, that is not relevant to the issues raised on appeal, and, therefore, this property will be referred to in the singular.

Footnote 2: These deeds have been filed with the County Clerk but were held pending this appeal (see CPLR 5519 [a] [5]). We take judicial notice of the deeds filed in Supreme Court (see NY St Cts Elec Filing [NYSCEF] Doc Nos. 251-252, exhibits, in Sardino v Scholet Family Trust, Sup Ct, Hamilton County, index No. EH2019-7488). In view of the fact that both specify a prescriptive easement, we direct the parties to file updated deeds in accordance with this Court's decision and, when filed, the Hamilton County Clerk is directed to record these updated deeds.

Footnote 3: Defendants argue extensively to this Court that plaintiffs' claim for an "[e]quitable [e]asement" should have been dismissed. In doing so, defendants take issue with Supreme Court's denial of that aspect of their motion for summary judgment seeking to dismiss this claim. As such, defendants have not abandoned this challenge (compare Barra v Norfolk S. Ry. Co., 75 AD3d 821, 822 n 1 [3d Dept 2010]).